IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEFFREY KAPCHE,<br><br>     Plaintiff,<br><br>  v.<br><br>MICHAEL MUKASEY, Attorney General of the United States,<br><br>     Defendant. | Civil Action No. 1:07-cv-02093 |

**DEFENDANT'S MOTION FOR PROTECTIVE ORDER REGARDING DISCLOSURE OF MEDICAL INFORMATION AND RECORDS**

Pursuant to Federal Rule of Civil Procedure 26, the United States of America and the Attorney General of the United States hereby move this Court for a protective order preventing the disclosure of the identities or medical information of applicants or agents of the Federal Bureau of Investigation. A memorandum in support of this motion and a proposed order are attached. Pursuant to Local Rule 7, counsel for Defendant conferred with Plaintiff's counsel. Plaintiff does not consent to this motion.

Dated March 11, 2008

Respectfully submitted,

JEFFREY BUCHOLTZ
Acting Assistant Attorney General

JOSEPH W. LOBUE
Assistant Branch Director,
Federal Programs Branch

MARSHA S. EDNEY
Senior Counsel, Federal Programs Branch

          /s/
_____
C. LEE REEVES

Department of Justice, Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 7109
Washington, D.C. 20530
Tel: 202-514-4805
Fax: 202-616-8470
*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEFFREY KAPCHE,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL MUKASEY, Attorney General of the United States,<br><br>    Defendant. | Civil Action No. 1:07-cv-02093 |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER REGARDING DISCLOSURE OF MEDICAL INFORMATION AND RECORDS**

**INTRODUCTION**

In this litigation, Plaintiff Jeffrey Kapche alleges that the Federal Bureau of Investigation ("FBI") discriminated against him by denying his application for employment because of his Type I diabetes in violation of the Rehabilitation Act. Plaintiff now seeks discovery of confidential medical information of current and former FBI employees and applicants. For the reasons explained below, the medical information Plaintiff seeks has little or no probative value with respect to his claims and the potential harm from disclosing this information will be substantial. To prevent this unwarranted invasion of privacy, this Court should issue a protective order (i) barring disclosure of the identity of FBI agents and applicants with medical conditions; (ii) barring disclosure of the medical records for those FBI agents and applicants; and (iii) prohibiting any additional discovery regarding the medical conditions of these agents or applicants.[1]

---

[1] Defendant has long understood that the discovery Plaintiff seeks in this case would need to be subject to a Privacy Act protective order, and accordingly collaborated with Plaintiff to secure one. However, in the course of preparing responses and reviewing documents in response

While Rule 26 permits a party to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party," it also makes clear that this right is not absolute. Fed. R. Civ. P. 26(b)(1). To the contrary, Rule 26 directs courts to limit discovery to the extent that "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, . . . the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(iii). As the D.C. Circuit has recognized, this limitation on the scope of discovery was added "to emphasize the need for active judicial use of subdivision (b)(2) to control excessive discovery." *In re Sealed Case (Medical Records)*, 381 F.3d 1205, 1215 (D.C. Cir. 2004) (quoting Advisory Committee Notes to Fed. R. Civ. P. 26(b)(1)).

Federal Rule of Civil Procedure 26(c) governs protective orders from discovery, and contemplates similar limitations on discovery. Rule 26(c) states in pertinent part that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery." In balancing the requesting party's need for discovery against the harm caused by allowing such discovery, a court should give particular scrutiny to discovery requests that threaten to infringe on privacy interests. *See In re Sealed Case (Medical Records)*, 381 F.3d at 1215 (recognizing that "interests in privacy may call for a measure of extra protection").[2] Relatedly, "where the

---

to Plaintiff's interrogatories and requests for production, it became clear that the information Plaintiff was seeking would require the disclosure of sensitive medical information beyond that necessary or relevant to a Rehabilitation Act case. Accordingly, Defendant now moves for a further protective order to protect this information.

[2]*See also United States v. Amodeo,* 71 F.3d 1044, 1050-51 (2d Cir. 1995) (stating that the "privacy interests of innocent third parties" should weigh heavily in a court's decision of whether

actual content of the record has the potential to cause harm to the affected party, a court supervising discovery should consider this factor in determining how to exercise its traditional authority to limit disclosure." *Id.*[3] These factors, applied here, leave no doubt that this Court should deny Plaintiff's request for the medical records of FBI employees and applicants.

## ARGUMENT

I.  **BECAUSE PLAINTIFF, AS A MERE APPLICANT, IS NOT SIMILARLY SITUATED TO CURRENT OR FORMER FBI EMPLOYEES, THE MEDICAL RECORDS OF CURRENT OR FORMER FBI EMPLOYEES HAVE LITTLE PROBATIVE VALUE TO PLAINTIFF'S CLAIMS**

Plaintiff has propounded various interrogatories and requests for documents to Defendant, including:

> (i) the names of any current or former "FBI agent with type one diabetes who has ever worked for the FBI, along with any problems such individual(s) has ever had on the job due to his or her medical condition" (Pl. Interrogatory #4);

> (ii) the names of any current or former "FBI agent with diabetes (either type one or type two) that Dr. Yoder has cleared for service, including the date that occurred, the date the individual became an FBI agent, and whether the individual is still so employed" (Pl. Interrogatory #5);

> (iii) "any and all employment problems relating to performance of the essential functions of FBI Special Agent that have actually occurred as a result of a medical condition such as diabetes of an FBI Special Agent since 2000" (Pl. Interrogatory #6);

> (iv) "[a]ll documents that record or reflect any and all employment problems

---

to permit disclosure of information sought).

[3] This heightened scrutiny of requests for private medical records under Rule 26 is consistent with the panoply of federal statutes and regulations restricting the manner and extent to which a person's medical information may be divulged. *See* 5 U.S.C. § 552a(b) (Privacy Act); 42 U.S.C. § 12112(d)(3)(B) and (4)(C) (Rehabilitation Act); 45 C.F.R. § 164.508 (regulations interpreting Health Insurance Portability and Accountability Act) (all restricting disclosure of medical information and records).

relating to performance of the essential functions of FBI special agent that have actually occurred as a result of a medical condition of a FBI [sic] involving diabetes since 2000" (Pl. Request for Production #7);

(v) "the name, age, medical reason, and date [of termination of] any employee who has been terminated or any job applicant whose conditional job offer has been withdrawn because of failure to meet the FBI's medical requirements from January 1, 2000, to the present"; (Pl. Interrogatory #11); and

(vi) "[a]ll documents related to the dismissal or withdrawal of conditional offer of employment, including medical records, for the individuals identified in response to Interrogatory 11" (Pl. Request for Production #17).

At the outset, it is important to note that applicants for the FBI Special Agent position are not similarly situated to Special Agents who are already employed by the FBI for purposes of disability accommodation. The FBI accommodates Special Agents who develop diabetes once they have entered on duty to a greater degree than applicants with diabetes for the Special Agent position.[4] The FBI is willing to accommodate individuals who are already employed as Special Agents more than applicants because the FBI has an interest in retaining personnel in whom the FBI has made a significant investment in terms of training and experience—an interest that is obviously absent for persons who have yet to be hired. This differential treatment of existing employees and applicants is plainly permissible under the Rehabilitation Act. *Barth v. Gelb*, 2 F.3d 1180, 1189 (D.C. Cir. 1993) (rejecting argument that agency had obligation to

---

[4]*See* Def. Resp. to Pl. Interrogatory #4 ("Defendant objects to this interrogatory on the ground that is not likely to lead to the discovery of admissible evidence because FBI Special Agents who develop diabetes after they have been hired are not similarly situated to Plaintiff, who was merely an applicant. The FBI does not automatically terminate the employment of Special Agents who develop an impairment during the course of their employment. Rather, the agency reviews such occurrences and makes a case-by-case determination about whether the agent can perform limited duty assignments, and if so for how long, or whether they can be placed in non-agent positions within the FBI. The FBI makes every reasonable effort to retain Special Agents they have already hired in order not to lose the value of the training and human capital that the FBI has invested in such agents.").

accommodate applicants and employees to same degree, as that argument "overlook[s] the benefits that agencies derive from accommodating the special needs of existing employees, which they do not gain from serving those of applicants"). Given that Plaintiff never successfully completed the application process, it is undisputed that he is not similarly situated to the FBI employees for whom he seeks medical records. Accordingly, to the extent that Plaintiff seeks medical records of current or former FBI employees, these records have little probative value in resolving Plaintiff's Rehabilitation Act claim. What is more, the scope of Plaintiff's requests are not even limited to Special Agents with Type I diabetes, who are the only agents to whom Plaintiff might profitably compare himself. To the contrary, Plaintiff seeks medical records of Special Agents who have had employment problems due to "a medical condition." *See* Pl. Interrogatory #6.

This expansive request, if granted, would give Plaintiff access to some of the most sensitive and private information imaginable. Plaintiff would have license to rummage through almost a decade of medical records of an untold number of FBI employees, thereby learning about the agents' private medical conditions, such as which agents are HIV-positive, which agents have contracted sexually transmitted diseases, and which agents have psychological disorders.[5] Such salacious information is but the tip of the iceberg of what Plaintiff would learn, all ostensibly in the pursuit of showing that he suffered unlawful discrimination because of his Type I diabetes. It bears repeating that this breathtaking intrusion on the privacy of untold numbers of agents would not help Plaintiff prove his claims, as the undisputed facts are that, as

---

[5]The burden on third party applicants and employees is separate and apart from the substantial and undue burden upon Defendant in gathering and producing such records. *See* Def. Resp. to Pl. Request for Production #17.

an applicant, Plaintiff is not similarly situated to the Special Agents who do not have Type I insulin-dependent diabetes, let alone those who suffer from some other "medical condition." Accordingly, this Court should exercise its discretion to preclude Plaintiff from seeking discovery either of the identity or the medical records of FBI agents or applicants who suffer from diabetes or any other "medical condition," and providing that Defendant shall not be required to respond to Plaintiff's discovery requests insofar as they seek access to such information.

## II.   THE MINIMAL PROBATIVE VALUE OF APPLICANTS' MEDICAL RECORDS TO KAPCHE DOES NOT OUTWEIGH THE HARM CAUSED BY THE INVASION OF PRIVACY

As noted previously, Plaintiff seeks the following discovery with respect to Special Agent applicants:

> (i) "the name, age, medical reason, and date [of termination of] any employee who has been terminated or any job applicant whose conditional job offer has been withdrawn because of failure to meet the FBI's medical requirements from January 1, 2000, to the present; (Pl. Interrogatory #11); and

> (ii) "[a]ll documents related to the dismissal or withdrawal of conditional offer of employment, including medical records, for the individuals identified in response to Interrogatory 11" (Pl. Request for Production #17)

The balancing calculus comes out the same with respect to Plaintiff's request for applicants' medical records. On the probativeness side of the ledger, the value to Plaintiff of obtaining medical records of applicants who were not hired by the FBI (i.e., "whose conditional job offer has been withdrawn") is nonexistent. To begin with, Plaintiff's request is overbroad; he seeks the medical records of applicants who were disqualified for *any* medical reason, not just diabetes. *See* Pl. Request for Production #17. Thus, the medical records of applicants who were medically

disqualified for a reason other than diabetes, or what accommodation the FBI did or did not give to a non-diabetic applicant has no conceivable relevance to Plaintiff's claims. Even as to those applicants with diabetes, the relevance of their medical records is not much greater. The gravamen of Kapche's claim is that he had appropriately managed his diabetes such that he could perform the essential functions of a Special Agent. In other words, this case is about whether Plaintiff is medically fit to perform the essential functions of an FBI Special Agent, not whether any other applicant, with his or her unique medical history, could do the job of a Special Agent. Thus, the medical records of diabetic applicants who were *not* hired by the FBI have no relevance to this case as they reveal nothing about whether *Kapche* is medically fit to perform the duties of a Special Agent.

    As to those agents who were hired by the FBI, Defendant has already provided, in summary form, information about other Special Agent applicants who have been cleared for service since 2000 notwithstanding the fact that they had Type I diabetes when they applied to be a Special Agent. Each of these individuals, Defendant's Interrogatory response states, managed his or her diabetes through an insulin pump. These disclosures make clear (i) how many applicants with Type I diabetes the FBI has cleared for service as a Special Agent since 2001; and (ii) how the FBI was willing to accommodate their diabetes (i.e., by allowing the use of an

insulin pump).⁶ Given this, further disclosures of the identity of these individuals and detailed medical information about each applicant would be of little, if any, value to Plaintiff in this case.

On the other hand, the harm to these applicants that would result from further disclosures would be substantial. As with agents' medical records, the disclosure of applicant medical records could cause considerable embarrassment and discomfort to numerous persons. But the harm to these applicants would likely not even end with the mere disclosure of their medical histories. Indeed, the only conceivable reason why Plaintiff might seek to learn the identity of these individuals would be to allow Plaintiff, armed with this sensitive medical information, to interrogate and them about their medical conditions or, alternatively, to depose these applicants, thereby requiring them to disclose even more personal, private information about their medical conditions.⁷ Whatever limited benefit Plaintiff might gain from these invasive inquires cannot justify the unwarranted invasion of personal privacy such disclosures would cause to third

---

⁶ *See* Def. Resp. to Pl. Interrogatory # 5 ("[D]efendant states that since 2001, three applicants who had type one diabetes were cleared for duty and all of those individuals managed their diabetes through the use of an insulin pump. The identity of these agents are being withheld since disclosure of the agents would reveal information derived from medical records which must be treated as confidential. *See* 42 U.S.C. § 12112(d)(3)(B) and (C) and (d)(4)(B) and (C).")

| Name | Date Cleared | Entered on Duty | Still Employed |
|---|---|---|---|
| A | 01/16/2003 | 3/9/2003 | yes |
| B | 11/07/2001 | did not | |
| C | 01/23/2008 | processing continues | |

⁷Of course, these same concerns would be present as to other FBI employees to the extent that this Court were to require defendants to disclose the identity of these employees and their medical records.

parties.[8]

## CONCLUSION

For the aforementioned reasons, Defendant respectfully requests that the Court issue a protective order barring:

(i) the disclosure of the identity of FBI agents and applicants with medical conditions;

(ii) the disclosure of the medical records for those FBI agents and applicants; and

(iii) prohibiting further discovery regarding the medical conditions of these agents or applicants.

Dated  March 11, 2008                Respectfully submitted,

JEFFREY BUCHOLTZ
Acting Assistant Attorney General

JOSEPH W. LOBUE
Assistant Branch Director,
Federal Programs Branch

MARSHA S. EDNEY
Senior Counsel, Federal Programs Branch

_____/s/_____
C. LEE REEVES
Department of Justice, Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 7109
Washington, D.C.  20530
Tel: 202-514-4805

---

[8] *See, e.g.*, *Williams v. Cochran*, 187 F.3d 639, *2 (6th Cir. 1999) (affirming district court decision granting protective order precluding discovery of third-party medical records); *Bennett By and Through Bennett v. Fieser*, 152 F.R.D. 641, 643 (D. Kan.1994) (restricting release of third-party medical records pursuant to Rule 26(c), and holding that "discovery of non-party medical records should be permitted only on the condition that the patient's name and other identifying information be deleted from the records, and that the parties and counsel shall make no effort to learn the identity of the patient or attempt to contact the patient.").

Fax: 202-616-8470
*Attorneys for Defendant*

-10-

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEFFREY KAPCHE,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL MUKASEY, Attorney General of the United States,<br><br>    Defendant. | Civil Action No. 1:07-cv-02093 |

**[Proposed] ORDER**

Upon consideration of Defendant's Motion for a Protective Order, it is hereby

ORDERED that the motion is GRANTED.


Dated: _____ .


_____
UNITED STATES DISTRICT JUDGE