UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Jeffrey Kapche, | § | CIVIL ACTION NO. 07-2093 (JR) |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| Michael Mukasey, Attorney General of the United States, | § | |
| Defendants | § | A JURY IS DEMANDED |

**Plaintiff's Response to the Defendant's Second Motion for Protective Order**

The plaintiff, Jeffrey Kapche, opposes the defendant's second motion for protective order. It is notable that the government's motion focuses solely on how the discovery it seeks to avoid is unrelated to plaintiff's "claims." This is beside the point, because the discovery the FBI resists in its motion relates to the FBI's *affirmative defenses*.

The fundamental flaw in the defendant's motion is that it seeks to withhold evidence about the viability of affirmative defenses that the defendant specifically chose to raise in this lawsuit. The government can no more properly deny Kapche this information than he could refuse to provide information regarding his own claims. To be sure, in its amended answer asserts the affirmative defense of "business necessity" in its Third Defense, and the affirmative defense of "direct threat" in its Fourth Defense. (See Dkt. No. 23).

Given the burden on the defense to prove them, Plaintiff sought discovery on them, which the FBI resists. The Court, in a telephonic conference, made known its approach, but the FBI nonetheless persists in its failure to make this discovery.

**Introduction**

These defenses are being brought because the Agency, after months of a highly competitive process, tentatively offered Plaintiff a special agent position, then revoked it due to his diabetes. This occurred in early 2004, when the FBI revoked its offer to Jeff Kapche, contending that his diabetes was "not sufficiently controlled..." (Ex. A). When he challenged that position by filing this litigation, it raised two affirmative defenses that are pertinent to the applicable discovery requests – "direct threat" and "business necessity."

Both of these affirmative defenses address the issue of the workplace risk. While they are different, in that "direct threat" ordinarily is used by an employer which has performed an individualized assessment of the candidate, and business necessity is ordinarily used to defend otherwise unlawful discrimination by utilizing qualification standards which screen out those with disabilities, here the FBI pled both of them.[1]

In *EEOC v. Exxon Corp.,* 203 F.3d 871 (5th Cir. 2000), the Court of Appeals explained the difference between the two defenses:

> Direct threat focuses on the individual employee, examining the specific risk posed by the employee's disability. See 29 C.F.R. § 1630.2(r). In contrast, business necessity addresses whether the qualification standard can be justified as an across-the-board requirement.

The Court also made clear that no matter which affirmative defense is at issue, proof is required to show that "the risks are real and not the product of stereotypical assumptions." 203 F.3d at 875. *See also Taylor v. Rice*, 451 F.3d 898 (D.C. Cir. 2006), *Branham v. Snow,* 392 F.3d 896

---

[1] *See* 42 U.S.C. 12112(b)(6), which defines unlawful discrimination as "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities." Meanwhile in 42 U.S.C. 12113, Congress enacted an affirmative defense to what is otherwise unlawful discrimination. See also, 29 CFR § 1630.2, discussing these two affirmative defenses.

(7th Cir.2004), *Kapche v. City of San Antonio*, 304 F.3d 493 (5th Cir. 2002) and *Millage v. City of Sioux City*, 258 F.Supp. 976 (N.D. Iowa 2003). These cases discuss the direct threat defense and its elements.

The assertion that Kapche was too risky to hire is ironic, since the FBI has admitted in discovery that no one with expertise in diabetes treatment was consulted before Kapche was denied employment. (Ex. B at 3). Yet, having pled these defenses, Kapche has a right to gather information about them. After all, it is not enough to blithely assert a risk. There must be specific proof offered. As the Supreme Court has made clear, "[b]ecause few, if any, activities in life are risk free, *Arline* and the ADA do not ask whether a risk exists, but whether it is significant." *Bragdon v. Abbott*, 524 U.S. 624, 649 (1998). If Kapche is not allowed to obtain this discovery, the Court should strike these defenses. And if it turns out that no evidence supports them, then summary judgment will be appropriate on them.

In *Branham v. Snow,* cited above, the Court of Appeals discussed the evidence necessary to prove "direct threat."

> The key inquiry when considering whether an employee is a direct threat is "not . . . whether a risk exists, but whether it is significant." *Bragdon, 524 U.S. at 649*. The assessment of risk "must be based on medical or other objective evidence" and the determination that a significant risk exists must be objectively reasonable.

392 F.3d at 906. Likewise, the D.C. Court of Appeals noted that "direct threat defense must be based on a reasonable medical judgment that relies on the most current medical knowledge and/or the best available objective evidence, and upon an expressly individualized assessment of the individual's present ability to safely perform the essential functions of the job, reached after considering, among other things, the imminence of the risk and the severity of the harm portended." *Taylor v. Rice*, 451 F. 3d at 906.

3

While the business necessity defense has some different facets, the Justice Department is on record as recognizing that blanket standards are only justified in very limited situations – where in *all* cases the medical condition would prevent the person from performing the essential functions of the job.  This is precisely what the legislative history provides, (S.Rep.  No. 116, 101st Cong., 1st Sess. 7, 27 (1989)).  More important, and unseemly for the FBI, it is exactly what the federal government wrote in an *amicus* brief submitted in another disability case involving this same plaintiff, when he faced such ban at the City of San Antonio.  *Kapche v. City of San Antonio*, 304 F.3d 493 (5th Cir. 2002).[2]  These proof obligations do not change because the Department of Justice is now a defendant in a disability case.  Yet the FBI pleads them and doggedly resists discovery on them.

In resisting this discovery, it says that (1) it should not be required to provide information about employees because applicants, such as Kapche, are not similarly situated to current FBI employees ; and (2) the probative values of these requests are outweighed by privacy interests. These objections are misplaced, as explained below.

Here is the specific information Kapche requested:

Interrogatory 4.  Identify any FBI agent with type one diabetes who has ever worked for the FBI, along with any problems such individual(s) has ever had on the job due to his or her medical condition.

Interrogatory 5.  Identify any FBI agent with diabetes (either type one or type two) that Dr. Yoder has cleared for service, including the date that occurred, the date the individual became an FBI agent, and whether the individual is still so employed.

Interrogatory 6.  Identify any and all employment problems relating to performance of the essential functions of FBI Special Agent that have actually occurred as a result of a medical condition such as diabetes of an FBI Special Agent since 2000.

---

[2] (http://www.usdoj.gov/crtbriefs/kapche.htm).

4

Interrogatory 11.  Please identify (specifying the name, age, medical reason, and date) any employee who has been terminated or any job applicant whose conditional job offer has been withdrawn because of failure to meet the FBI's medical requirements from January 1, 2000, to the present.

Request for Production 7.  All documents that record or reflect any and all employment problems relating to performance of the essential functions of FBI special agent that have actually occurred as a result of a medical condition of a FBI involving diabetes since 2000.

Request for Production 17.  All documents related to the dismissal or withdrawal of conditional offer of employment, including medical records, for the individuals identified in response to Interrogatory 11.

(Ex. C).  These discovery requests seek information that is critical to rebutting these two affirmative defenses.  To be sure, they go to the heart of the supposed risk of following through with its offer and employing Kapche as a special agent.  They also go to the heart of whether a ban on those who manage diabetes by insulin injections is supported by the business necessity affirmative defense.

### Applicants vs. Incumbents Is Not a Valid Distinction

The defendant presents two objections to the discovery sought.  First, the defendant contends that it should not be required to provide information about those who serve as FBI agents because they are not similarly situated to Kapche.  This statement misses the entire point of the discovery.  This is not an accommodation case.  The authority cited by the defendant is an accommodation case[3] that is of no help here, where affirmative defenses are involved.  It is quite brazen for the FBI to say Kapche was not hired because his diabetes was going to be a serious risk and a direct threat, while arguing at the same time that its actual experience with diabetes in the workplace is "irrelevant."   In measuring the significance of the risk, as the statute and case law require, one must review the risk that is accepted now, in the workplace.  Either the risk is

---

[3] *Barth v. Gelb*, 2 F.3d 1180 (D.C. Cir. 1993).

5

real or simply hypothetical.  For example, the FBI may, while rejecting individuals with diabetes, accept those who have myocardial infarctions *on the job*, when the latter are far more likely to face an on the job difficulty than a well managed individual with diabetes.  So the FBI must disclose the real world risks it accepts when arguing that Kapche was a direct threat because of his diabetes.  If what the FBI calls an "incumbent" has diabetes and does well, or does not do well because of diabetes, this is dead on relevant on whether the ban was necessary or that Kapche's diabetes made him a direct threat.

Common sense dictates that the FBI must produce information about those with diabetes who actually serve as FBI special agents, because it is that evidence that bears upon their defenses.  If it turns out that all this information is so difficult to gather, as the FBI's motion alleges, and has not been gathered, how then could the agency have come to the conclusion that it was necessary to have a qualification standard that bans those who manage diabetes with insulin injections?   Yet, that is precisely the information that the FBI refuses to provide, even after the Court, in the telephonic conference, directed it to do so.

## The Privacy Interests Asserted by the Defendant

The only other argument presented by the defendant is that the requested discovery would improperly invade the privacy interests of the individuals whose medical conditions were revealed.[4]  But that is precisely why Kapche agreed to the first protective order – to make it clear

---

[4]   In a footnote the government makes an oblique reference to the burden of providing this information. (Motion at 5, n.5).  Since it does not discuss this argument in the text or provide any authority, this is clearly not a ground for this motion.  If it were, it would not be well-founded.  As the court explained in *Wagner v. Dryvit Systems, Inc.,*208 F.R.D. 606, 611 (D. Nebraska 2001), "The fact that a corporation has an unwieldy record keeping system which requires it to incur heavy expenditures of time and effort to produce requested documents is an insufficient reason to prevent disclosure of otherwise discoverable information." *See also Kozlowski v. Sears, Roebuck and Company,* 73 F.R.D. 73, 76 (1976), where the court pointed out that "[t]o allow a defendant whose business generates massive records to frustrate discovery by

that all this information would be kept private and used only for purposes of this litigation. Now the Court, when it directed the FBI to provide discovery on its experience with diabetes in the workplace, did allow it to redact the names.   Kapche pointed out that he could live with that, although the FBI did list, by name, agents it has sent abroad, seeking to show the Court how dangerous the job is.  Kapche is under a protective order, as is the FBI.  Given that the FBI has decided not to comply with the Court's directive, it should list the officers with diabetes as it has done with those it sent abroad.  The parties will faithfully comply with the protective order.

It boils down to this.  Will the Court allow the FBI to accuse Kapche of being too risky for its workplace, and then resist discovery because of a claim that privacy interests prevent anyone from getting to the bottom of its claim?  They insist that absolutely no medical information for FBI agents or applicants[5] should be provided.  This is not an appropriate litigation posture.  After all, the government could certainly choose not to raise these affirmative defenses if it believes that privacy is this much of a consideration.  But, having itself raised the issues that necessitate this discovery, it is not in a position to stonewall with this excuse.  Or if it will not produce this information, then these defenses should be dismissed.

Kapche has absolutely no interest in embarrassing anyone, he only seeks to rebut the affirmative defenses that this defendant has pled in an effort to derail his case.  He can only rebut those defenses with information and it is that information that the defendant seeks to shield.  The defendant claims that Kapche's goal is simply to interrogate them about their medical conditions.

---

creating an inadequate filing system, and then claiming undue burden, would defeat the purposes of discovery rules. "

[5]  As to applicants, the defendant has provided only limited information about a few applicants who were hired with Type 1 diabetes since 2000.  But, as discussed above, Kapche requested additional information for the purpose of assessing workplace risk in an effort to rebut the defendant's affirmative defenses.

(Motion at 8). Not so. The reason would be to assess whether or not the FBI's fears about diabetes are real or not. And whether the risk tolerated in the workplace is consistent with the affirmative defenses of business necessity and direct threat. Instead of providing that information, this motion seeks an order barring disclosure of the identity of any FBI agents and applicants with medical conditions. It is certainly possible that some of these agents may be deposed if their diabetes does, or does not, interfere with their ability to perform the essential functions of the job. Perhaps the FBI has no evidence at all of any performance issues with agents with diabetes. If that is the case, it would doom the affirmative defense, but it is still relevant. If they have had performance issues, then those must be correlated to the blanket rule against those who manage diabetes with insulin injections and correlated to Kapche's supposed risk of direct threat.

The Court already gave the FBI an opportunity to give a false name for these officers, and that invitation was spurned. If the Court allows the Agency to do this, that would address the privacy interests of the individuals. Yet these agents may need to be deposed. That is the reality.

## Conclusion

The plaintiff, Jeffrey Kapche, respectfully asks that the Court to deny the defendant's second motion for protective order so that at long last, this critical discovery will be made so that the parties may begin deposing witnesses.

Respectfully submitted,

s/ John W. Griffin, Jr.
Texas Bar No. 08460300
Marek, Griffin & Knaupp
203 N. Liberty Street
Victoria, Texas 77901
(361) 573-5500
Fax  (361) 573-5040

Katherine L. Butler
Texas Bar No. 03526300
1007 Heights Boulevard
Houston, Texas  77008
(713) 526-5677
Fax (713) 526-5691

David R. Cashdan
D.C. Bar No.  051342
Cashdan & Kane, PLLC
1150 Connecticut Avenue N.W.
Washington, D.C.  20036-4129
(202) 862-4353 (telephone)
(202) 862-4331 (fax)

### Certificate of Service

I certify that a true and correct copy of this document has been served upon the defendants' counsel via electronic service on the 4th day of April 2008, addressed as follows:

Diane Kelleher (Diane.Kelleher@usdoj.gov)
US Department of Justice, Civil Division
20 Massachusetts Ave., NW
Washington, D.C.  20530

s/ Katherine L. Butler

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Jeffrey Kapche, | § | CIVIL ACTION NO. 07-2093 (JR) |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| Michael Mukasey, Attorney General of the | § | |
| United States, | § | |
| Defendants | § | A JURY IS DEMANDED |

### Declaration of Katherine L. Butler

1. My name is Katherine L. Butler.  I am more than eighteen years of age and fully competent to make this declaration.  I have personal knowledge of the facts stated herein and they are true and correct.

2. I represent the plaintiff, Jeffrey Kapche, along with co-counsel, John Griffin. Attached to this declaration are true and correct copies of (A) the February 2004 letter from the FBI to Jeff Kapche rescinding his conditional offer of employment; (B) the government's answers to requests for admission; and (C) the plaintiff's initial set of discovery requests in this case.

I declare under penalty of perjury that the foregoing is true and correct.

Signed in Houston, Texas, USA this 4th day of April 2008.


/s/ Katherine L. Butler

Exhibit A



**U.S. Department of Justice**

**Federal Bureau of Investigation**

Washington, D. C. 20535-0001

February 11, 2005

Mr. Jeffrey Scott Kapche
22518 Rippling Shore Court
Katy, Texas  77494

Dear Mr. Kapche:

This is to advise you that your application for employment
as a Special Agent with the Federal Bureau of Investigation has been
placed in an inactive status and your conditional offer of appointment
letter dated November 23, 2004 is hereby rescinded.

Your desire to become affiliated with the FBI is
appreciated.  The medical information you submitted however shows that
your Insulin Dependent Diabetes Mellitus (IDDM) is not sufficiently
controlled to meet the requirements of the Special Agent position.
Medical concerns regarding IDDM relate to requirements of the Special
Agent position for unexpected emergency travel to international duty
locations, to include grueling schedules and austere medical support
environments.  Attempting to maintain tight control, when food
portions and timing cannot be judged accurately, increases the risks
of hypoglycemic episodes, which would place you or others at increased
risk.

Our medical staff has advised that reconsideration would
require an acceptable level of stability (daily log) over several
months in addition to the last year's worth of A1C levels and
laboratory reports to include blood glucose and urine tests.  However,
as you have now passed your 37th birthday, no further consideration
can be afforded your application for employment as a Special Agent.

Public Law 93-350, approved on July 12, 1974, which
liberalized the retirement benefits for Federal law enforcement
officers and firefighters, allowed the heads of agencies which had
such positions to establish a maximum age for original entry on duty
in these positions.  Using the authority granted, the Attorney
General, with the concurrence of the Office of Personnel Management,
set the last day of the month during which one reaches his or her 37th
birthday as the last date for original entry on duty as a law
enforcement officer in the Department of Justice (DOJ).  There are

1 - SAC, Houston (67B-HQ-1361186)

Mr. Jeffrey Scott Kapche

provisions which permit age waivers to be granted by DOJ officials under certain well-defined conditions. However, the rules governing such waivers are very stringent, and the circumstances in your case simply do not meet the established guidelines for requesting an exception to the maximum age limit.

This decision does not in any way reflect negatively on your eligibility for future employment with the FBI. Should you wish to be considered for another position within the FBI, you are encouraged to periodically refer to the FBI's home page on the Internet at http://www.fbijobs.com which provides information concerning current vacancies.

I appreciate your continued interest in employment with the FBI and wish you well in future professional endeavors.

Sincerely yours,

Dorothy C. Summerfield, Chief
Special Agent Applicant
Processing Unit
Administrative Services
Division

2

Exhibit B

UNITED STATES OF AMERICA
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
WASHINGTON FIELD OFFICE

| | |
|---|---|
| JEFFREY S. KAPCHE ) | EEOC Case No. 570-2006-00365X |
| Complainant, ) | |
| v. ) | |
| ALBERTO GONZALES, ) | Agency Case. No. F-05-6041 |
| ATTORNEY GENERAL ) | |
| UNITED STATES DEPARTMENT ) | |
| OF JUSTICE, ) | DATE: September 1, 2006 |
| Agency. ) | |

## AGENCY'S RESPONSES AND OBJECTIONS TO COMPLAINANT'S REQUEST FOR ADMISSIONS

The U.S. Department of Justice, by and through the Federal Bureau of Investigation

("FBI" or "Agency") and the undersigned Agency Representative, hereby tenders its Responses

and Objections to Complainant's Request for Admissions.

### Responses and Objections to Request for Admissions

1.    Admit or deny that the Agency extended to Mr. Kapche a conditional offer of

employment as a Special Agent on or about November 23, 2004.

**Response:** The Agency admits that it offered Mr. Kapche a conditional appointment as a

Special Agent in the FBI, United States Department of Justice by letter dated November 23,

2004. The Agency does not have information sufficient to admit or deny whether the

aforementioned letter was mailed out on November 23, 2004.

2.    Admit or deny that when the conditional offer was made, the Agency believed Mr.

Kapche was qualified for the job.

**Response:** Deny.

3.    Admit or deny that when the conditional offer was made, Mr. Kapche had the necessary education and experience to perform the Special Agent job.

**Response:** Admit.

4.    Admit or deny that the agency revoked its offer to Mr. Kapche on or about February 11, 2005.

**Response:**  The Agency admits that by letter dated February 11, 2005 it notified Mr. Kapche that his application for employment as a Special Agent with the FBI had been placed in an inactive status and that his conditional offer of appointment letter had been rescinded.  The Agency does not have information sufficient to admit or deny whether the aforementioned letter was mailed out on February 11, 2005.

5.    Admit or deny that the Agency revoked the offer because of its perception that Mr. Kapche's diabetes was not sufficiently controlled to meet the requirements of the Special Agent position.

**Response:** With the understanding that the factors to be considered in determining whether Mr. Kapche's diabetes was sufficiently "controlled" to meet the requirements of the Special Agent position include the means of insulin delivery, admit.

6.    Admit or deny that the Agency did not seek from Mr. Kapche, before revoking his offer, a) daily glucose logs over several months:

**Response:** The Agency admits that it did not seek from Mr. Kapche, before rescinding his conditional offer of appointment, daily glucose logs over several months.

b) A1c results over a period of one year

-2-

Case 1:07-cv-02093-JR    Document 24-4    Filed 04/04/2008    Page 4 of 8

Received:  9/ 1/06  2:43PM;        202 324 4097 -> Marek, Griffin & KNAUPP;  Page 4
  SEP-01-2006  15:29      202 324 4097 OGC ELU1                202 324 4097    P.04

**Response:** The Agency admits that it did not seek from Mr. Kapche, before rescinding his conditional offer of appointment, A1c results over a period of one year.

7.    Admit or deny that no expert in endocrinology participated in the Agency's revocation of its offer to Mr. Kapche.

**Response:** Admit

8.    Admit or deny that Mr. Kapche has never experienced:

a) any complications of any kind from diabetes

**Response:** The Agency does not have information sufficient to admit or deny this Request.

b) any debilitating hypoglycemic episode (requiring the assistance of another person)

**Response:** The Agency does not have information sufficient to admit or deny this Request.

c) any hyperglycemic episode causing any detection of Ketones in the blood or urine

**Response:** The Agency does not have information sufficient to admit or deny this Request.

9.    Admit or deny that Mr. Kapche has maintained good control over his diabetes during his entire career as a law enforcement officer.

**Response:** The Agency does not have information sufficient to admit or deny this Request.

10.    Admit or deny that the Agency is aware of no physician who has ever contended

-3-

Received:  9/ 1/06  2:43PM;                202 324 4097 -> Marek, Griffin & KNAUPP;   Page 5

SEP-01-2006  15:29          202 324 4097 OGC ELU1                         202 324 4097    P.05

that Mr. Kapche's diabetes was "uncontrolled." Disregard Dr. Yoder for purposes of this

Request.

**Response:** Admit.

11.     Admit or deny that no physician within the Agency's knowledge has ever

contended that Mr. Kapche's diabetes would have made him a direct threat to himself or others

in the workplace. Again, disregard Dr. Yoder for purposes of this Request.

**Response:** The Agency objects to this Request on the basis that the term "workplace" is

vague and ambiguous. The Agency further objects to this Request on the basis that it asks the

Agency to admit or deny whether a physician has made a legal conclusion.

12.     Admit or deny that no physician within the Agency's knowledge has ever

contended that Mr. Kapche's blood glucose values were anything other than acceptable. Again,

disregard Dr. Yoder for purposes of this Request.

**Response:** The Agency objects to this Request on the basis that the term "acceptable" is

vague and ambiguous. Subject to and without waiving these objections, the Agency admits that

no physician within the Agency's knowledge has ever contended that Mr. Kapche's blood

glucose values were "unacceptable."

13.     Admit or deny that there are no written medical requirements for the FBI Special

Agent position that required Mr. Kapche to provide:

>        a) daily glucose logs over a several month period

**Response:** Admit.

>        b) A1c values over a one year period

**Response:** Admit.

>        c) proof of insulin pump therapy

Received:  9/ 1/06  2:43PM;                202 324 4097 -> Marek, Griffin & KNAUPP;  Page 6
SEP-01-2006  15:29        202 324 4097 OGC ELU1                202 324 4097   P.06

Response: Admit.

14.    Admit or deny that you contend that your employing Mr. Kapche as a Special
Agent would have posed a direct threat to himself or others in the workplace.

Response: Admit as to certain workplaces of a Special Agent employed by the FBI.

15.    Admit or deny that you contend that Mr. Kapche has no actual disability at all.

Response: Admit.

16.    Admit or deny that you contend that you did not regard him as having a disability.

Response: Admit.

17.    Admit or deny that you did not gather the most current objective medical
information about Mr. Kapche before revoking his offer.

Response: The Agency objects to this Request on the basis that the term "most current
objective medical information about Mr. Kapche" is vague and ambiguous.  Subject to these
objections, and without waiving same, the Agency refers Complainant to its responses to Request
No. 6.

18.    Admit or deny that Mr. Kapche has supplied all information sought from him
prior to the revocation of the offer.

Response: Admit that Mr. Kapche supplied all information sought from him prior to the
conditional offer of appointment letter being rescinded.

19.    Admit or deny that Mr. Kapche's diabetes is an impairment under the
Rehabilitation Act.

Response: Admit.

20.    Admit or deny that Mr. Kapche's diabetes is a substantial limitation on the life
activities of eating, metabolizing food, and caring for himself.

Received:  9/ 1/06  2:43PM;                202 324 4097 -> Marek, Griffin & KNAUPP;  Page 7

   SEP-01-2006  15:29        202 324 4097 OGC ELU1                    202 324 4097    P.07

**Response:** Deny.

21.     If you denied Request for Admission No. 20, admit or deny that the Agency

contends that 1) Mr. Kapche's diabetes rendered him a direct threat and

   **Response:** Admit as to certain workplaces of a Special Agent employed by the FBI.

   2) that he has no disability at all

**Response:** Admit.

22.     Admit or deny that the Agency could have, but failed to gather medical records

that the Agency contends were needed to show Mr. Kapache's [sic] "stability."

   **Response:** The Agency does not have information sufficient to admit or deny this

Request.

23.     Admit or deny that the Agency does employ Special Agents who have Type I

diabetes.

   **Response:** Admit.

24.     Admit or deny that the Agency does not have a per se rule excluding all

individuals with Type I diabetes from Special Agent positions.

   **Response:** Admit.

Respectfully submitted,

Thomas M. Lipovski
Assistant General Counsel
Office of General Counsel
Room PA-400N
Federal Bureau of Investigation
935 Pennsylvania Avenue, N.W.
Washington, D.C. 20535
Telephone: (202) 220-9321
Facsimile: (202) 220-9355

Date: September 1, 2006

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served this date by first class mail, postage prepaid,

unless otherwise indicated below, on the following:

1-   **Complainant's Representative**
     John W. Griffin
     Marek, Griffin & Knaupp, L.L.P.
     120 S. Main Street, Suite 301
     Victoria, Texas 77901
     **By first class mail postage prepaid and facsimile: (361) 573-5040**

1-   **Complainant**
     Jeffrey S. Kapche
     22518 Rippling Shore Court
     Katy, TX 77494

_9/1/2006_
Date

Thomas M. Lipovski

# Exhibit C

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Jeffrey Kapche, | § | CIVIL ACTION NO. 1:07-cv-02093 |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| Alberto Gonzales, Attorney General of the | § | |
| United States, | § | |
| Defendants | § | A JURY IS DEMANDED |

**Plaintiff's First Set of Discovery Requests**

The plaintiff, Jeffrey Kapche, serves these discovery requests on Alberto Gonzales, Attorney

General of the United States, as authorized by Rules 26, 33, and 34 of the Federal Rules of Civil

Procedure. The plaintiff requests that the documents be produced at the offices of Butler & Harris,

1007 Heights Boulevard, Houston, Texas 77008, within thirty days of the date this request is

received.

Definitions and Instructions

1.      "Defendant," "you," or "your" shall mean the Attorney General of the United States.

2.      "Person" shall mean and include natural persons, partnerships, corporations,

unincorporated associations, and all other forms of organization or association.

3.      The singular shall include the plural and vice versa.

4.      To "identify" a person where the person is a natural person, means to state the

person's full name, employer, job title or position, present or last known address, and telephone

number.

5.      To "identify" a person where the person is other than a natural person, means to

1

state the person's full name, the kind of legal entity it is, its present or last known address, and its executive officer.

6.      If the answer to any interrogatory is not made from the personal knowledge of the person signing the answers to these interrogatories, identify each person from whom, or documents from which, the information was obtained to make the particular answer and also identify each person having personal knowledge of such information.

7.      If you claim that any document described in these requests is privileged, or if you otherwise decline to produce a document responsive to one or more of the following requests, you are required to give the date of the document, the names, addresses and telephone numbers of the author and recipients of the document, the subject matter of the document, and the specific, detailed reasons on which you are claiming that the document is privileged or on which you are otherwise declining to produce that document.

Respectfully submitted,

_____
**JOHN GRIFFIN, JR.**
State Bar No. 08460300
203 North Liberty Street
Victoria, Texas  77901
(361) 573-5500 – Telephone
(361) 573-5040 – Telecopier

**Attorney in charge for Plaintiffs**

**Katherine L. Butler**
State Bar No. 03526300
1007 Heights Boulevard
Houston, Texas  77008
(713) 526-5677
Fax (713) 526-5691

2

## Certificate of Service

I certify that a true and correct copy of this document has been served upon the defendant's counsel via first class mail on the 29th day of November 2007, addressed as follows:

> Marsha S. Edney
> US Department of Justice, Civil Division
> 20 Massachusetts Ave., NW, Room 7148
> Washington, D.C. 20530

_____

Katherine L. Butler

## Interrogatories and Requests for Production

### Interrogatories

1. Please identify each and every fact that supported the Agency's finding that the plaintiff's diabetes "is not sufficiently controlled to meet the requirements of the Special Agent position."

Response:

2. Identify all doctors you have consulted about the plaintiff's diabetes at any time since he applied to be a special agent, including when and about what they were consulted

Response:

3. Which essential job function(s) of an FBI Special Agent do you believe the plaintiff unable to perform or substantially limited in performing?

Response:

4. Identify any FBI agent with type one diabetes who has ever worked for the FBI, along with any problems such individual(s) has ever had on the job due to his or her medical condition.

Response:

5. Identify any FBI agent with diabetes (either type one or type two) that Dr. Yoder has cleared for service, including the date that occurred, the date the individual became an FBI agent, and whether the individual is still so employed.

Response:

6. Identify any and all employment problems relating to performance of the essential functions of FBI Special Agent that have actually occurred as a result of a medical condition such as diabetes of an FBI Special Agent since 2000.

Response:

7. Please describe the international travel that Houston-based FBI agents did in 2004 and 2005, including destination, length of stay, any problems with the agents obtaining food and water, and which agents were involved.

Response:

8.  At any time in this century, have officers in the Houston office been sent on international travel where they were unable to obtain adequate water and regular meals?  If so, provide the specifics.

Response:

9.  State when and why the FBI's medical standards for diabetes were created by Dr. Yoder and Dr. Fabbri and the input, if any, they received from other doctors (including the identification of such doctor(s)) before finalizing those standards.

Response:

10. Identify any and all studies, research programs, reports, test groups or other methods used as the basis for or in developing the medical standards for diabetes used by the FBI.  Include in your answer the dates of the study or other program, by whom it was conducted, the participants, and the results.

Response:

11.     Please identify (specifying the name, age, medical reason, and date) any employee who has been terminated or any job applicant whose conditional job offer has been withdrawn because of failure to meet the FBI's medical requirements from January 1, 2000, to the present.

Response:

12.  Do you verify for purposes of this litigation the accuracy of each of the answers you gave on September 1, 2006, to interrogatories from the plaintiff in EEOC Case No. 570-2006-00365X?
If not, please state why not for each answer.

Response:

13.  Identify each person who has knowledge of facts relevant to this litigation and, for each, state the substance of that person's knowledge as it pertains to this litigation, including any expert witnesses who may be asked to testify. NOTE: The purpose of this interrogatory is to ensure that the government has identified all sources of information, including individual's whose testimony would be supportive of the plaintiff in any way.

Response:

14.    State the monthly salary and benefits plaintiff would have earned from 2004 to the present if he had begun employment as a special agent.

Response:

## Requests for Production

1. All documents referenced in response to Interrogatory 1.

2. The FBI's medical screening requirements for diabetes.

3. All documents used by Dr. Yoder and/or Dr. Fabbri in establishing the FBI's medical standards for diabetes.

4. All documents you received from the plaintiff.

5. All interviews of the plaintiff.

6. All documents that were generated as a result of or during any research programs, studies, reports, test groups or other methods identified in your response to Interrogatory 10, including, but not limited to reports, papers, articles, diaries, or journals.

7. All documents that record or reflect any and all employment problems relating to performance of the essential functions of FBI special agent that have actually occurred as a result of a medical condition of a FBI involving diabetes since 2000.

8. For the years 2000 to the present all documents reflecting the precise hiring and retention policies for FBI special agents with regard to those with diabetes.

9. All medical documents regarding the plaintiff that you have in your possession as well as any medical test results and raw data from said tests that were reviewed or relied on in your decision to withdraw the conditional offer of employment.

10. All reports, documents and tangible things prepared by or for an expert witness in anticipation of the expert's trial or deposition testimony or which was prepared by a consulting expert if prepared in anticipation of litigation and which forms a basis either in whole or in part of the opinion of the testifying expert. This request includes the entire file of each testifying

expert and all documents furnished to you by any expert witnesses you have identified, including, but not limited to, factual observations, opinions, tests, supporting data, calculations, sketches or photographs.

11. All communications between you and the plaintiff or any representative of the plaintiff, including correspondence, memoranda, or other documents that concern or relate to the subject matter of this litigation.

12. All written and recorded statements you have (whether in correspondence or otherwise) concerning any matter made the subject of this litigation and all documents, videotapes, audio tapes or other type of recording containing, referring to or relating to any such matters.

13. All documents that contain information that would tend to be supportive of any legitimate reason that you allege led, in whole or in part, to the withdrawal of a conditional offer of employment to the plaintiff.

14. All documents that contain information that would tend to undermine or discredit any legitimate reason that you allege led, in whole or in part, to the withdrawal of a conditional offer of employment to the plaintiff.

15. All emails that mention the plaintiff or his application for employment .

16. All documents that contain information relating to your answer to Interrogatory 8

17. All documents related to the dismissal or withdrawal of conditional offer of employment, including medical records, for the individuals identified in response to Interrogatory 11.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Jeffrey Kapche, | § | CIVIL ACTION NO. 07-2093 (JR) |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| Michael Mukasey, Attorney General of the | § | |
| United States, | § | |
| Defendants | § | A JURY IS DEMANDED |

## ORDER

Pending before this Court is the defendant's second motion for entry of a protective order and the plaintiff's response. The Court has reviewed the pleadings and arguments of the parties and finds that the Defendant's Second Motion for Protective Order should be and hereby is DENIED.

Dated: _____        _____
                                                            UNITED STATES DISTRICT JUDGE