UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Jeffrey Kapche, | § | CIVIL ACTION NO. 07-2093 (JR) |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| Michael Mukasey, Attorney General of the United States, | § § | |
| Defendants | § | A JURY IS DEMANDED |

**Plaintiff's Sur-reply to the Defendant's Second Motion for Protective Order**

The plaintiff, Jeffrey Kapche, files this brief to address the defendant's misstatements of fact and law.  The reason a sur-reply is necessary is because, for the first time in its reply memorandum, the government claims that Kapche did not comply with its request for blood glucose logs.  This claim was not made in the government's motion for protective order.  But, in its reply, the government has contrived a new qualification standard for the Special Agent position that was never communicated to Kapche during the application process.  Kapche thus needs to address the government's new claim.

<u>The Government's Attempt to Rewrite the Facts is Inappropriate</u>

After the FBI made a job offer to Kapche, the FBI required him to submit to a fitness for duty medical examination.  That examination was performed by Dr. John Burpeau, a doctor chosen by the FBI and that doctor cleared Kapche, saying "medically clear – fit for duty." (Exhibit A - FBI Examination Summary Report).  The FBI has admitted in responses to requests for admissions at the EEOC that the FBI neither requested nor expressed any interest at all in Kapche's blood glucose logs.  (Exhibit B - Request for Admission 6).  If they had, he would have provided them straightaway.  To be sure, the FBI has admitted that Kapche provided everything it asked for. (Exhibit B - Request for Admission 18).

Litigation is not some sort of game, where the rules of honesty change from court to court. Yet the FBI, in an effort to avoid the discovery Kapche seeks, takes a 180 degree turn. It now claims that the requirement of blood glucose logs was in fact a qualification standard; it even claims that this case turns on whether sound medical evidence supports this requirement. (Response at 4-5). This is truly perverse. In essence, the FBI claims that it has *hidden* qualification standards[1] for those with diabetes. How in the world could anyone know what was required to satisfy the FBI's hidden standards? Even its own doctor never asked for this information.

The government cannot properly claim that it should prevail on this motion based on a qualification standard that was never communicated to Mr. Kapche and is not even a written requirement. Indeed, the FBI has admitted that supplying months of blood glucose logs was not a written medical requirement, nor was the ban on those individuals who manage diabetes by insulin injections. (Exhibit B - Request for Admission 13).

---

[1] The FBI now claims that it had another hidden qualification standard that it concealed to Kapche, that of a ban on those individuals who manage diabetes with insulin injections. *See* Exhibit B, Answer to Request for Admission No. 13.

Disability Law Does Not Allow a Refusal to Comply with Discovery Requests
Bearing on the FBI's Affirmative Defenses

The FBI's shifting "qualification standard" points to a deeper issue – which is that the FBI is wrongly claiming, *post hoc*, that Kapche was just too risky to employ and seeking any way possible to justify that position. The misguided claim of risk is precisely why Kapche has requested medical information about the FBI's experience with Special Agents. And it is disingenuous for the FBI to suggest that risk is not at the heart of its defense in this case. While it contends that Kapche does not need to know about risks tolerated by the FBI, because such information is not relevant to its affirmative defenses, its own response shows otherwise. After all, when the FBI makes a point of saying that it need not defer safety-related qualifications standards until "someone has been killed" (Response at 5), it tells this Court quite clearly that it will base its case on the notion that Kapche is too grave a risk.[2] Indeed, it said just that in its answer. It said that "[a]llowing plaintiff to perform the essential functions of a Special Agent would pose a direct threat to the health and safety of Plaintiff, other FBI agents, and members of the public." (Amended Answer, Doc. 23 at 1-2).

The point of this discovery is to give Kapche the ability to first gain discovery on, and second, to rebut the FBI's assertion of risk with hard facts. After all, the government says that it can prove business necessity by showing that the qualification standard at issue substantially promotes the business's needs. (Response at 4). But then it claims that Kapche cannot find out any information that would bear upon whether that is really accurate. If the FBI actually tolerates individuals with diabetes in the workplace or those with medical conditions that create

---

[2]Of course, the obvious question is this: compared to what? All risk is relative, and the FBI's dogged refusal to share the real world experience of those agents with diabetes is clearly unsupported.

far greater risks, then Kapche is entitled to that information. Does the government actually assume that Special Agents with other medical conditions are "uncontrolled" in the absence of any evidence showing that? The government's misguided position is that Kapche and this Court are required to take the government's word for the fact that this standard accomplishes its goal. Yet affirmative defenses require more than the word of a party. Having assumed the burden of proof on its two affirmative defenses, the FBI cannot shield information bearing upon them.

The term "business necessity", after all, implies that the standard was not just convenient for the agency, but was vital. *Conroy v. New York State Dept. of Correctional Services*, 333 F.3d 88 (2d Cir. 2003). One way for Kapche to rebut the notion that this standard was vital is to show that far greater risks are tolerated for individuals who do not have diabetes. In order to assess whether Kapche is a risk, one needs to look at the risks that the FBI already tolerates with regard to diabetes or other medical conditions. This is precisely what both disability law and logic counsel. They recognize, as the Supreme Court does, that "[b]ecause few, if any, activities in life are risk free, *Arline* and the ADA do not ask whether a risk exists, but whether it is significant." *Bragdon v. Abbott*, 524 U.S. 624, 649 (1998)[3]. It is thus simply not true that these affirmative defenses have no relationship to the FBI's experience with other medical conditions. If the FBI is allowed to say that an applicant is too risky, then Kapche has a right to show the pretext of that statement – by presenting evidence that the FBI tolerates far higher risks.[4] That is the nature of the trial process. One party is not just allowed to present its case

---

[3] The same standards applies under Rehabilitation Act. 42 U.S.C. 12117(b).

[4] Kapche is also permitted to show that objective and current medical evidence do not support the government's position that either affirmative defense is a business necessity.

without any evidence coming from the other side. That would be ludicrous. But it is what the FBI proposes with an apparent straight face.

Twenty-five years ago, the Third Circuit made clear that in looking at business necessity, it is certainly relevant to look at the risks the employer takes. In that case, a bus driver with hearing aids was deemed too risky, in part because of the possibility his hearing aids could be dislodged, when the same employer had no problem accepting the risk that a bus driver's glasses would be knocked off. *Strathie v. Dept. of Transportation*, 716 F.2d 227 (3rd Cir. 1983). In rejecting that double standard, the Court noted, "That such an individual is allowed to obtain a school bus driver's license indicates that the Department views some safety risks as too remote to justify the denial of a school bus driver's license."

Apparently, the FBI wants this case to be decided on fear and speculation, rather than facts. Indeed, it even goes so far as to ask this Court to apply a hypothetical qualification standard that was admittedly not communicated during the application process. But just as it insists on evidence from Kapche, he has a right to rebut the affirmative defenses that the government has chosen to assert in this case. It can certainly drop them, but having affirmatively raised the issue, it is in no position to blame Kapche for seeking information about its workforce.

After all, a case cited by the FBI, *EEOC v. Exxon*, 203 F.3d 871,875 (5th Cir. 2000), requires proof that the risks are real, rather than the result of stereotypical assumptions. Without information about the real world experience of the FBI, how in the world can he rebut the assertion that he was too grave a risk?

The FBI's Asserted Concerns about Privacy are Not Relevant Where
Kapche has Agreed to Accept False Names for the Individuals Identified

Having asked Kapche to agree to an earlier protective order to protect the privacy of information produced in this litigation, it is surprising to see the FBI claim that the privacy rights of its employees will be gravely affected by the grant of these discovery requests. In truth, privacy is really not an issue at this point. Kapche has agreed to this Court's suggestion on the telephone that the defendant use false names. No individual has been noticed for deposition and any concerns about privacy can be raised if, and when, that occurs. At this point, the issue is written discovery and the FBI's insistence that no information be provided that would permit rebuttal of its assertion of risk.

The FBI is Taking Liberties with Kapche's Position

It is ironic that the government would claim that Kapche, whose diabetes is very well-controlled, indeed whose endocrinologist praised him as a role model for those with diabetes, would somehow object to a standard that requires good control of diabetes. But without a shred of factual support, it accuses Kapche of saying that "the FBI could not enact medical qualifications standards in advance of any performance-related problems..." Actually, Kapche's position is that the government relied on speculation, not objective medical evidence, in declaring his diabetes "not sufficiently controlled." And he further states the truth, which has been admitted by the defendant in answers to requests for admissions, that it did not perform an individualized assessment nor gather the most current medical information nor rely on the most objective evidence in revoking his offer. (*See* Exhibit B, Answers to Request for Admission No. 17 and No. 18 and No. 6).

Conclusion

The plaintiff, Jeffrey Kapche, respectfully asks that the Court to deny the defendant's second motion for protective order so that at long last, this critical discovery will be made and the parties may begin deposing witnesses. He further requests that the defendant comply within ten days of the Court's order on its motion.

Respectfully submitted,

s/ John W. Griffin, Jr.
Texas Bar No. 08460300
Marek, Griffin & Knaupp
203 N. Liberty Street
Victoria, Texas 77901
(361) 573-5500
Fax (361) 573-5040

Katherine L. Butler
Texas Bar No. 03526300
1007 Heights Boulevard
Houston, Texas 77008
(713) 526-5677
Fax (713) 526-5691

David R. Cashdan
D.C. Bar No. 051342
Cashdan & Kane, PLLC
1150 Connecticut Avenue N.W.
Washington, D.C. 20036-4129
(202) 862-4353 (telephone)
(202) 862-4331 (fax)

**Certificate of Service**

    I certify that a true and correct copy of this document has been served upon the defendants' counsel via electronic service on the 18th day of April 2008, addressed as follows:

    Diane Kelleher (Diane.Kelleher@usdoj.gov)
    US Department of Justice, Civil Division
    20 Massachusetts Ave., NW
    Washington, D.C.  20530

                                            s/ Katherine L. Butler

Exhibit A

# Exhibit B

Case 1:07-cv-02093-JR    Document 26-3    Filed 04/18/2008    Page 2 of 8

Received:   9/ 1/06  2:43PM;           202 324 4097 -> Marek, Griffin & KNAUPP;         Page 2
SEP-01-2006  15:28      202 324 4097 OGC ELU1                        202 324 4097    P.02

UNITED STATES OF AMERICA
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
WASHINGTON FIELD OFFICE

| | |
|---|---|
| JEFFREY S. KAPCHE | ) |
| | ) EEOC Case No. 570-2006-00365X |
| Complainant, | ) |
| | ) |
| v. | ) |
| | ) |
| ALBERTO GONZALES, | ) Agency Case. No. F-05-6041 |
| ATTORNEY GENERAL | ) |
| UNITED STATES DEPARTMENT | ) |
| OF JUSTICE, | ) DATE: September 1, 2006 |
| | ) |
| Agency. | ) |

## AGENCY'S RESPONSES AND OBJECTIONS TO COMPLAINANT'S REQUEST FOR ADMISSIONS

The U.S. Department of Justice, by and through the Federal Bureau of Investigation ("FBI" or "Agency") and the undersigned Agency Representative, hereby tenders its Responses and Objections to Complainant's Request for Admissions.

**Responses and Objections to Request for Admissions**

1. Admit or deny that the Agency extended to Mr. Kapche a conditional offer of employment as a Special Agent on or about November 23, 2004.

**Response:** The Agency admits that it offered Mr. Kapche a conditional appointment as a Special Agent in the FBI, United States Department of Justice by letter dated November 23, 2004. The Agency does not have information sufficient to admit or deny whether the aforementioned letter was mailed out on November 23, 2004.

2. Admit or deny that when the conditional offer was made, the Agency believed Mr. Kapche was qualified for the job.

Case 1:07-cv-02093-JR   Document 26-3   Filed 04/18/2008   Page 3 of 8

Received:    9/ 1/06   2:43PM;              202 324 4097 -> Marek, Griffin & KNAUPP;    Page 3
SEP-01-2006  15:29        202 324 4097 OGC ELU1                    202 324 4097    P.03

**Response:** Deny.

3. Admit or deny that when the conditional offer was made, Mr. Kapche had the necessary education and experience to perform the Special Agent job.

**Response:** Admit.

4. Admit or deny that the agency revoked its offer to Mr. Kapche on or about February 11, 2005.

**Response:** The Agency admits that by letter dated February 11, 2005 it notified Mr. Kapche that his application for employment as a Special Agent with the FBI had been placed in an inactive status and that his conditional offer of appointment letter had been rescinded. The Agency does not have information sufficient to admit or deny whether the aforementioned letter was mailed out on February 11, 2005.

5. Admit or deny that the Agency revoked the offer because of its perception that Mr. Kapche's diabetes was not sufficiently controlled to meet the requirements of the Special Agent position.

**Response:** With the understanding that the factors to be considered in determining whether Mr. Kapche's diabetes was sufficiently "controlled" to meet the requirements of the Special Agent position include the means of insulin delivery, admit.

6. Admit or deny that the Agency did not seek from Mr. Kapche, before revoking his offer, a) daily glucose logs over several months:

**Response:** The Agency admits that it did not seek from Mr. Kapche, before rescinding his conditional offer of appointment, daily glucose logs over several months.

b) A1c results over a period of one year

-2-

Received:    9/ 1/06  2:43PM;           202 324 4097 -> Marek, Griffin & KNAUPP;   Page 4
SEP-01-2006  15:29      202 324 4097 OGC ELU1                  202 324 4097    P.04

**Response:** The Agency admits that it did not seek from Mr. Kapche, before rescinding his conditional offer of appointment, A1c results over a period of one year.

7. Admit or deny that no expert in endocrinology participated in the Agency's revocation of its offer to Mr. Kapche.

**Response:** Admit

8. Admit or deny that Mr. Kapche has never experienced:

   a) any complications of any kind from diabetes

**Response:** The Agency does not have information sufficient to admit or deny this Request.

   b) any debilitating hypoglycemic episode (requiring the assistance of another person)

**Response:** The Agency does not have information sufficient to admit or deny this Request.

   c) any hyperglycemic episode causing any detection of Ketones in the blood or urine

**Response:** The Agency does not have information sufficient to admit or deny this Request.

9. Admit or deny that Mr. Kapche has maintained good control over his diabetes during his entire career as a law enforcement officer.

**Response:** The Agency does not have information sufficient to admit or deny this Request.

10. Admit or deny that the Agency is aware of no physician who has ever contended

-3-

that Mr. Kapche's diabetes was "uncontrolled." Disregard Dr. Yoder for purposes of this Request.

**Response:** Admit.

11.   Admit or deny that no physician within the Agency's knowledge has ever contended that Mr. Kapche's diabetes would have made him a direct threat to himself or others in the workplace. Again, disregard Dr. Yoder for purposes of this Request.

**Response:** The Agency objects to this Request on the basis that the term "workplace" is vague and ambiguous. The Agency further objects to this Request on the basis that it asks the Agency to admit or deny whether a physician has made a legal conclusion.

12.   Admit or deny that no physician within the Agency's knowledge has ever contended that Mr. Kapche's blood glucose values were anything other than acceptable. Again, disregard Dr. Yoder for purposes of this Request.

**Response:** The Agency objects to this Request on the basis that the term "acceptable" is vague and ambiguous. Subject to and without waiving these objections, the Agency admits that no physician within the Agency's knowledge has ever contended that Mr. Kapche's blood glucose values were "unacceptable."

13.   Admit or deny that there are no written medical requirements for the FBI Special Agent position that required Mr. Kapche to provide:

   a) daily glucose logs over a several month period

**Response:** Admit.

   b) A1c values over a one year period

**Response:** Admit.

   c) proof of insulin pump therapy

Received: 9/ 1/06  2:43PM;         202 324 4097 -> Marek, Griffin & KNAUPP;   Page 6
SEP-01-2006  15:29    202 324 4097 OGC ELU1                    202 324 4097    P.06

Response: Admit.

14. Admit or deny that you contend that your employing Mr. Kapche as a Special Agent would have posed a direct threat to himself or others in the workplace.

Response: Admit as to certain workplaces of a Special Agent employed by the FBI.

15. Admit or deny that you contend that Mr. Kapche has no actual disability at all.

Response: Admit.

16. Admit or deny that you contend that you did not regard him as having a disability.

Response: Admit.

17. Admit or deny that you did not gather the most current objective medical information about Mr. Kapche before revoking his offer.

Response: The Agency objects to this Request on the basis that the term "most current objective medical information about Mr. Kapche" is vague and ambiguous. Subject to these objections, and without waiving same, the Agency refers Complainant to its responses to Request No. 6.

18. Admit or deny that Mr. Kapche has supplied all information sought from him prior to the revocation of the offer.

Response: Admit that Mr. Kapche supplied all information sought from him prior to the conditional offer of appointment letter being rescinded.

19. Admit or deny that Mr. Kapche's diabetes is an impairment under the Rehabilitation Act.

Response: Admit.

20. Admit or deny that Mr. Kapche's diabetes is a substantial limitation on the life activities of eating, metabolizing food, and caring for himself.

Case 1:07-cv-02093-JR    Document 26-3    Filed 04/18/2008    Page 7 of 8

Received:   9/ 1/06  2:43PM;          202 324 4097 -> Marek, Griffin & KNAUPP;   Page 7
  SEP-01-2006  15:29       202 324 4097 OGC ELU1                    202 324 4097    P.07

**Response:** Deny.

21. If you denied Request for Admission No. 20, admit or deny that the Agency contends that 1) Mr. Kapche's diabetes rendered him a direct threat and

**Response:** Admit as to certain workplaces of a Special Agent employed by the FBI.

2) that he has no disability at all

**Response:** Admit.

22. Admit or deny that the Agency could have, but failed to gather medical records that the Agency contends were needed to show Mr. Kapache's [sic] "stability."

**Response:** The Agency does not have information sufficient to admit or deny this Request.

23. Admit or deny that the Agency does employ Special Agents who have Type I diabetes.

**Response:** Admit.

24. Admit or deny that the Agency does not have a per se rule excluding all individuals with Type I diabetes from Special Agent positions.

**Response:** Admit.

Case 1:07-cv-02093-JR   Document 26-3   Filed 04/18/2008   Page 8 of 8

Received: 9/ 1/06  2:44PM;            202 324 4097 -> Marek, Griffin & KNAUPP;  Page 8
SEP-01-2006  15:30      202 324 4097 OGC ELU1                202 324 4097   P.08

Respectfully submitted,

*[signature]*

Thomas M. Lipovski
Assistant General Counsel
Office of General Counsel
Room PA-400N
Federal Bureau of Investigation
935 Pennsylvania Avenue, N.W.
Washington, D.C. 20535
Telephone: (202) 220-9321
Facsimile: (202) 220-9355

Date: September 1, 2006

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served this date by first class mail, postage prepaid, unless otherwise indicated below, on the following:

1- **Complainant's Representative**
John W. Griffin
Marek, Griffin & Knaupp, L.L.P.
120 S. Main Street, Suite 301
Victoria, Texas 77901
**By first class mail postage prepaid and facsimile: (361) 573-5040**

1- **Complainant**
Jeffrey S. Kapche
22518 Rippling Shore Court
Katy, TX 77494

_9/1/2006_
Date

*[signature]*
Thomas M. Lipovski