## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JEFFREY KAPCHE,                 :
                                :
        Plaintiff,         :
                                :
   v.                    :  Civil Action No. 07-2093 (JR)
                                :
ERIC HOLDER, Attorney General of :
the United States,       :
                                :
        Defendant.        :

## MEMORANDUM ORDER

Jeffrey Kapche is a Type 1 diabetic.  In 2002, he applied for a special agent position with the FBI.  He received a conditional offer in 2004, but it was later revoked because the FBI determined that he did not have sufficient control over his diabetes, and that he would be unable to take on certain responsibilities of the position.  Kapche sued under the Rehabilitation Act.  Earlier this year, a jury awarded him $100,000 in damages.  Dkt. 101.  The defendant now renews his motions for judgment as a matter of law and for a new trial.  The motions will be denied.

### A. Judgment as a matter of law

Judgment as a matter of law should be granted only if "the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not disagree on the verdict."  <u>Duncan v. Wash. Metro. Area Transit Auth.</u>, 240 F.3d 1110, 1113 (D.C. Cir. 2001).

To find for Kapche, the jury had to conclude that he: (1) was disabled; (2) was qualified to perform the essential functions of the position to which he applied; and (3) suffered an adverse employment action because of his disability.  Desmond v. Mukasey, 530 F.3d 944, 952 (D.C. Cir. 2008).  The defendant contends that there was not enough evidence to support the jury's determination that Kapche was disabled.

As I explained in my jury instructions:

> The term "disability" means a physical or mental impairment that substantially limits one or more [] major life activities. Type 1 diabetes is not a disability unless, in the individual case, it substantially limits one or more of a person's major life activities. Mr. Kapche contends that, in his individual case, his Type 1 insulin-dependent diabetes substantially limits the manner in which he performs the major life activities of eating and caring for himself when compared to an average person in the general population.

> In determining whether a limitation is substantial, you must take into account the effects of any mitigating or corrective measures, both positive and negative, on Mr. Kapche's performance of the major life activities of eating and caring for himself.[1]

_____

[1] The standard set forth in this paragraph is derived from Sutton v. United Air Lines, 527 U.S. 471 (1999), which addressed the term "disabled" in the Americans with Disabilities Act (ADA). Congress recently amended the ADA to "reject the requirement enunciated by the Supreme Court in [Sutton] and its companion cases that whether an impairment substantially limits a major life activity is to be determined with reference to the ameliorative effects of mitigating measures."  Pub. L. No. 110-325, § 2(b)(2), 122 Stat. 3553, 3554 (2008).  But because the FBI terminated Kapche's application before this amendment took effect, Sutton is the controlling law of this case.

- 2 -

> You may also consider these factors: The
> nature and severity of the restriction, the
> duration or expected duration of the
> restriction, and the permanent or long-term
> impact or expected long-term [] impact of or
> resulting from the restriction.

Tr. 1022:21-1023:14.

Kapche adduced evidence and argued that, while his diabetes was well-controlled, the measures he took to maintain that control imposed substantial limitations on the way he ate and cared for himself.  The defendant submits that Kapche failed to make that showing because he did not prove that his diabetes control regimen differed from that of a typical Type 1 diabetic, and that, in Sutton v. United Air Lines, 527 U.S. 471 (1999), the Supreme Court found that the standard Type 1 diabetes treatment regimen did not impose substantial limitations on any major life activity.  See Dkt. 112, at 4.

The defendant's reading of Sutton turns the opinion on its head.  Under Sutton, to determine whether a plaintiff is disabled, the fact finder must conduct an "individualized inquiry" into whether the plaintiff's condition -- or the measures he takes to address that condition -- place substantial limitations on his performance of major life activities.  Sutton, 527 U.S. at 483.  In dicta, to illustrate why the fact finder should evaluate the plaintiff in his corrected state, the Court notes:

- 3 -

> [C]ourts would almost certainly find all
> diabetics to be disabled, because if they
> failed to monitor their blood sugar levels
> and administer insulin, they would almost
> certainly be substantially limited in one or
> more major like activities.  A diabetic whose
> illness does not impair his or her daily
> activities would therefore be considered
> disabled simply because he or she has
> diabetes.  Thus, [this] approach would create
> a system in which persons often must be
> treated as members of a group of people with
> similar impairments, rather than as
> individuals.  This is contrary to both the
> letter and spirit of the ADA.

Id. at 483-84.  Mysteriously, the defendant reads this passage as a holding that "the act of treating diabetes with insulin cannot, by itself, constitute a disability absent some evidence of difficulty or complications."  Dkt. 112, at 4.  But this paragraph is not a holding at all, much less a holding that certain types of treatments can never constitute a disability under federal law.  The defendant's interpretation would treat diabetic plaintiffs "as members of a group of people with similar impairments, rather than as individuals," subverting Sutton's fundamental ruling.

In this individual case, there was enough evidence in the record to support the jury's finding that Kapche's "Type 1 insulin-dependent diabetes substantially limit[ed] the manner in which he perform[ed] the major life activities of eating and caring for himself when compared to an average person in the general population."  Kapche described his regimen as "a constant

- 4 -

battle every day," one where "the minute you don't do [it] is when you can have problems or complications."  Tr. 540:7-9.  In part, his regimen consisted of: testing his blood sugar several times a day, Tr. 538: 18-19; closely monitoring the quality and quantity of food he ate, Tr. 539:8-17; adjusting his food intake and insulin levels before exercising or long days of work, Tr. 539:14-25; and recalculating his target insulin levels and food intake when ill, Tr. 542: 23-543:7.  One of Kapche's expert witnesses, Dr. James Gavin, stated that Kapche was "subject to a number of severe limitations in terms of his eating and the way he care[d] for himself," and highlighted the severe consequences Kapche would face if he did not maintain constant vigilance.  Tr. 465:15-467:4.

At trial, through cross-examination and the presentation of his own witnesses, the defendant made the same argument that he makes now: that Kapche's diabetes management regimen is simply a hassle, and involves the same kinds of monitoring and planning that one would do when on a diet.  But the jury determined that Kapche's limitations were more substantial -- a reasonable conclusion given the evidence before them.

**B. New trial**

The defendant seeks a new trial on three grounds: first, that I should not have allowed Dr. Gavin to present his

opinion on whether Kapche was disabled; second, that I should not have permitted Dr. Gavin to testify that Kapche was medically qualified to perform the essential functions of an FBI special agent; and third, that I should have allowed the defendant to cross-examine Dr. Gavin on the differences between two insulin-delivery mechanisms.  None of these rulings was a "clear miscarriage of justice," necessitating a new trial.  McNeal v. Hi-Lo Powered Scaffolding, Inc., 836 F.2d 637, 646 (D.C. Cir. 1988).

        The defendant contends that Dr. Gavin did not have a factual basis for his opinion that Kapche was disabled because he was not familiar with Kapche's "specific management of his diabetes."  Dkt. 112, at 18.  The defendant is right that Dr. Gavin did not personally conduct an examination of Kapche, but he did review a host of records that documented Kapche's treatment regimen, including the FBI's medical examination of Kapche and depositions of the FBI's doctors and Kapche's treating physician.  Tr. 461:17-462:14.  I allowed cross-examination of Dr. Gavin on the basis of his conclusions, and the cross was extensive, eliciting the points defendant makes on this motion: that Dr. Gavin had never met Kapche, let alone examined him, Tr. 486:19-487:1; that he only had a limited set of medical records to assess Kapche's treatment regimen, Tr. 487:2-490:9; and that he was unaware of certain aspects of Kapche's regimen, Tr.

490:16-491:19.  The jury was free to discount Dr. Gavin's testimony accordingly, but the gaps the defendant has identified in Dr. Gavin's account are not so large as to render his opinion inadmissible.

Similarly, the defendant argues that there was no factual basis for Dr. Gavin's testimony that Kapche was medically qualified to be an FBI special agent.  That is not the case.  On direct examination, Dr. Gavin stated, "since I was asked to comment on the issue of whether or not [Kapche] was qualified to be an agent, and I assume that to be medically qualified, I had to depend on the input from the [FBI's] examining physician.  And in this case I relied on the fairly extensive physical examination and historical record that had been obtained by the examining physician on behalf of the FBI."  Tr. 462:9-14.  Based on his review of that examination, Dr. Gavin said that he "agree[d] with the FBI's examining physician . . . that [Kapche] appears to have been fully qualified to assume the responsibilities that they were vetting him for."  Tr. 462:18-21.

On cross-examination, Dr. Gavin reiterated that his opinion was based on the findings of the FBI's examining physician, Dr. Burpeau, and that neither he nor Dr. Burpeau had a background in occupational medicine.  Tr. 493:8-497:2.  He also admitted that he did not know what the essential functions of an FBI special agent were.  Tr. 497:13-19.  Again, the jury could

discount or ignore Dr. Gavin's testimony accordingly, but Dr. Gavin's review of Dr. Burpeau's medical findings, and his background of treating diabetics with physically demanding jobs, provided an adequate basis for his opinion that Kapche was medically qualified to be an FBI special agent.

Finally, the defendant seeks a new trial because I would not allow him to cross-examine Dr. Gavin on whether the FBI's preferred diabetes treatment method (the "pump") was superior to Kapche's treatment method (the "pen") given the demands of the special agent position.  Kapche attacked the medical basis for the FBI's pump requirement through the expert testimony of Dr. Desmond Schatz, and I allowed the defendant to cross-examine Dr. Schatz at length about the features of both the pump and the pen.  See Tr. 221-66.  But I foreclosed a similar cross-examination of Dr. Gavin because he simply stated that Kapche could perform the duties of a special agent while using the pen.  Dr. Gavin did not hold himself out as an expert on the relative virtues of the pump and the pen, and he did not criticize the FBI for its pump requirement.  Thus, the cross-examination the defendant sought was beyond the scope of Dr. Gavin's direct testimony.

\*       \*       \*

The defendant's motions [# 104] for judgment as a matter of law and for a new trial are **denied**.

- 8 -

It is **SO ORDERED**.


                                    JAMES ROBERTSON
                              United States District Judge