# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEFFREY KAPCHE, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 07-2093 (JR) |
| ERIC HOLDER, Attorney General of the United States, | : |
| Defendant. | : |

## MEMORANDUM

After a jury returned a verdict in favor of Jeffrey Kapche on his claim of discrimination and violation of the Rehabilitation Act on May 20, 2009, awarding him compensatory damages of $100,000, the parties turned their attention to the question of what equitable remedy, if any, would be awarded the plaintiff under the "make whole" rubric applied in employment discrimination cases.[1] On 10/21/09, I heard evidence and argument on plaintiff's motion for back pay and either instatement or front pay. The parties submitted pre-hearing briefs and supplemental materials following the hearing. Those papers, and the testimony taken at the October 21 hearing, deal mostly with the FBI's position that plaintiff is entitled to no equitable relief after March 1, 2007, the date on which the FBI revoked its conditional offer of employment upon a finding of

---

[1] The equitable remedy process was delayed for four months by the briefing and decision of a defense motion for judgment as a matter of law [#104] that was denied on 9/11/2009 [#113].

lack of candor in plaintiff's application process.  A secondary issue, not dealt with at the October 21 hearing but subsequently briefed by the parties, is whether, between the date on which the FBI was found to have discriminated against him and March 1, 2007, plaintiff suffered any actual economic damages compensable by an equitable remedy.

    1.   The <u>McKennon</u> defense

<u>McKennon v. Nashville Banner Pub. Co.</u>, 513 U.S. 352, 362-63 (1995), applied in this Circuit by <u>Castle v. Reuben</u>, 78 F.3d 654, 657 (D.C. Cir. 1996), established that a district court may deny instatement, front pay and full back pay when the employer has presented after-acquired evidence of misconduct "of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge."  <u>McKennon</u>, 513 U.S. at 362-3.

In this case, the FBI was reconsidering its decision not to hire plaintiff because of his diabetes regimen, as a way of resolving his (then) internal discrimination complaint. During the Personnel Security Interview ("PSI") that was part of that reconsideration process, plaintiff represented that he had not been disciplined by any of his former employers.  The FBI, however, learned in a follow-up inquiry that plaintiff had failed to cooperate with an investigation into an incident involving the unauthorized pumping of gasoline from the tank of his then-

employer, the Fort Bend County Sheriff's Office, until he was advised that his continuing denial of misconduct might lead to a polygraph examination, and that plaintiff had been subsequently suspended without pay for some two weeks and placed on disciplinary probation for 180 days. After confronting plaintiff with this information, the FBI determined that the explanation plaintiff gave to it (the FBI) for why he took the gasoline contradicted the explanation he had given to his supervisors at the Fort Bend County Sheriff's Office. At that point, the FBI determined that plaintiff was unsuitable for employment as an FBI Special Agent because of "lack of candor" and revoked its conditional offer of employment.

Plaintiff first took the position [see #117] that the FBI's after-acquired evidence argument could not be heard because it was an alternative defense "never pled" and the witnesses relevant to the defense were not timely disclosed. But the FBI's amended answer [#23] sufficiently alleged the defense. And plaintiff has not asserted and cannot assert that he was surprised by the after-acquired evidence defense: it was the subject of active pretrial discovery and indeed was the subject of a successful motion in limine to exclude the testimony of the very witnesses who knew about the after-acquired evidence. See [#79].

Plaintiff now makes a series of arguments that the McKennon defense does not apply in this case.  First, he argues that the FBI must show that it was its actual practice - not just its stated policy - to refuse Special Agent employment to a person who conducted himself as Kapche did.  Second, plaintiff argues that the FBI was precluded from raising the McKennon defense because the gasoline incident and plaintiff's failure to disclose it were a "direct result" of the unlawful discrimination.  Finally, plaintiff argues that the defense is not applicable in refusal to hire cases because McKennon involved only pre-termination misconduct.   [#117].

As to the first of these arguments: No evidence was adduced, either at the trial or at the evidentiary hearing on equitable relief, that supported plaintiff's suggestion that the FBI applied its "lack of candor" policy arbitrarily, or discriminatorily.[2]  I decline to embark on a whole new round of discovery and to conduct what would amount to another trial of this ancillary issue.[3]

---

[2]     During and after the 10/21/09 hearing, plaintiff relied heavily on the fact that he "passed" a polygraph examination, arguing that it mitigated against a "lack of candor" finding and that it showed the FBI did not comply with its own policies. [#127]  At plaintiff's urging, I ordered the FBI to produce an unredacted version of the test document for my review *in camera*.  I found nothing to suggest that the FBI applied its policies arbitrarily or discriminatorily.

[3]     Although there had been substantial discovery on the after-acquired defense, plaintiff wanted more, including the

Plaintiff's second, "direct result" argument confuses "direct result" with "but-for" causation. It may be true that, "but-for" the FBI's discrimination, plaintiff would not still have been employed at the Fort Bend Sheriff's Office at the time he took the gasoline. There is no causal link, however. In the one case plaintiff cites to support this argument, the misconduct in question occurred at a hearing "occasioned by plaintiff's termination." Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 555 (10th Cir. 1999). Here, plaintiff's misconduct was unrelated to the discrimination.

On the third argument: McKennon does deal with pre-termination misconduct, but plaintiff offers no convincing explanation of why its rationale would not apply to refusal to hire or reinstatement cases as well. See Sellers v. Mineta, 358 F.3d 1058 (8th Cir. 2004) (no front pay where plaintiff's own post-termination misconduct prevented her from obtaining the "traditional remedy of reinstatement").

The FBI presented more than enough evidence to establish that its refusal to hire decision was made in good faith and driven by its suitability guidelines. The guidelines

---

FBI's practice with similarly situated applicants, depositions of the two individuals that authored the so-called "lack of candor" memorandum, information about the people who were allegedly "call[ing] the shots" on the hiring decision in the Office of General Counsel, and depositions of other potentially relevant witnesses. [#117].

state that deliberate omissions may be disqualifying, absent mitigating circumstances. [#127, Ex. B]. Two witnesses from the FBI's Applicant Adjudication Unit who were responsible for overseeing Plaintiff's application process - Sharon Magargle and Bonnie Adams - testified that applicants who demonstrate a lack of candor are unsuitable for employment under the guidelines. [#122 at 132, 234]. A witness from the FBI's Office of Professional Responsibility ("OPR"), Brian Chehock, testified that Special Agents who make misrepresentations on employment forms or otherwise demonstrate a lack of candor are not suitable for employment in the first place, or, if they are "on-board" employees, are subject to dismissal. He testified that this conduct would make an agent <u>Giglio</u>-impaired, meaning that he or she would be hindered or precluded from testifying at trial. [#122 at 250-253].[4] None of this evidence was rebutted.

The FBI properly invoked the after-acquired evidence defense. Plaintiff will not have the remedies of instatement or front pay.

---

[4] Plaintiff makes much of the fact that he never had access to the FBI contract employee, Tracy Johnson, who first made the "lack of candor" decision. Her memorandum laying out all the factors for her decision, however, and the testimony of the FBI employees who were ultimately responsible for the decision - Magargle and Adams - is a sufficient demonstration of good faith. Margargle testified that this adjudication decision was "not a close call to [her] at all." [#122 at 234].

2. Back pay

Plaintiff's entitlement to back pay – if any – is only for the period from January 23, 2005 - the date the FBI started discriminating against him - to March 1, 2007 - the date of the refusal to hire because of after-acquired evidence.

The FBI's expert, Dr. William Carrington, calculated that the sum of plaintiff's income from his employment at the Fort Bend County Sheriff's Office and from other employers between January 23, 2005 and March 1, 2007, plus the retirement benefits accrued during this time, was $150,322 [#125, at ¶ 45]; and that, if plaintiff had been employed by the FBI, which required a year of training at Quantico, adherence to a rigid pay step system, and adherence to the its policy of not placing Special Agents in their hometown offices, he would have earned $11,934 less. [#125, at ¶ 61].

Plaintiff's expert, Dr. Amy McCarthy, disputed that calculation and asserted that plaintiff is entitled to between $43,350 to $38,871 in back pay, [#126, Exhibit A], but Dr. Carrington pointed out two errors in Dr. McCarthy's calculation that account for the difference: (1) she included $27,000 in Federal Employee Retirement System benefits that would not have accrued to plaintiff because the statute requires federal employees to complete five years of service before retaining any retirement benefits, 5 U.S.C. § 8410; and (2) she

pushed the benefits of the above-market guaranteed return on plaintiff's seven percent contribution to the Texas County and District Retirement System into the future. [#130]. After adjustment for those errors, Dr. McCarthy's calculation would also result in a negative back pay figure. Plaintiff never responded to Dr. Carrington's critique of Dr. McCarthy, except for his motion to strike the response as untimely (or, in the alternative, for an additional seven days to respond, [#131], but plaintiff has made no subsequent filings in the five months that have passed since then). I find that Dr. Carrington's calculation of back pay is accurate, and that plaintiff is entitled to no back pay.

      An appropriate order accompanies this memorandum.


                                                 JAMES ROBERTSON
                                    United States District Judge